***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing party has not shown good cause to reconsider the evidence, receive further evidence, or rehear the parties and their representatives. Accordingly, the Full Commission AFFIRMS the Opinion and Award of Deputy Commissioner Holmes with modifications and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. The date of the alleged injury or occupational disease that is the subject of this claim is September 17, 2008. However, if Plaintiff's condition is compensable as an occupational disease, there might be a different date on which Plaintiff was both (1) disabled and (2) diagnosed by competent medical authority as having a work-related condition.
2. At all relevant times, the parties hereto were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. At all relevant times, Defendant-Employer regularly employed three (3) or more employees in the State of North Carolina.
4. At all relevant times, the carrier of workers' compensation insurance in North Carolina for the Defendant-Employer was New Hampshire Insurance Company with AIG acting as third-party administrator.
5. Plaintiff's pre-injury average weekly wage is $989.22, resulting in a compensation rate of $659.51.
6. The North Carolina Industrial Commission has jurisdiction over the subject matter and the parties involved in this case.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, Plaintiff was forty-nine years old and has worked at Defendant-Employer or its predecessors for 28 years. He completed two years of college and is married with three children. *Page 3 
2. Plaintiff works as an assigned baggage handler in Defendant-Employer's fleet service division. He works six flights a day, each of which involves loading and unloading planes and transporting luggage and cargo between flights at the Charlotte airport.
3. Plaintiff works at the bottom of a conveyor belt when unloading planes. When the baggage comes down the belt, Plaintiff manually loads it onto carts that are pulled by a tug vehicle to other gates so that the baggage can be transferred to departing flights.
4. To load these carts, Plaintiff has to lift the baggage and other cargo and put it in the carts using his arms overhead or at levels above the shoulder. He also has to grasp the baggage and cargo with his hands and thumbs.
5. Plaintiff has to lift, on average, two hundred bags or more per flight. Each item of baggage or luggage weighs between eighty and a hundred and ten pounds on average.
6. Defendant-Employer's written description of Plaintiff's job describes it as both "repetitive" and "heavy." Under the U.S. Department of Labor's definition of the term "heavy," which the description uses, "heavy" involves occasional lifting — that is, up to one-third of the workday — of weights up to one hundred pounds and frequent — that is, between one-third and two-thirds of the workday — lifting up to seventy pounds. Although the job description states that Plaintiff has to "grasp" the baggage and cargo with his hands up to two-thirds of the day, Plaintiff agreed that he did this the entire workday.
7. Time is of the essence in Plaintiff's job, because if the baggage and cargo does not make it to the other gates for departing flights, Defendant-Employer's customers are dissatisfied. Plaintiff has a thirty-minute turnaround for each flight.
8. After Plaintiff loads his carts from an incoming flight, he then has to drive the tug vehicle to other gates for departing flights, where he has to unload the same baggage. This *Page 4 
activity involves the same grasping and overhead reaching and lifting that loading the baggage involves.
9. Plaintiff was diagnosed with stenosing tenosynovitis, or "trigger thumb," although he was not formally diagnosed with "tenosynovitis" specifically until the deposition of Dr. Kevin Burroughs on June 25, 2009. This condition arose gradually over the course of Plaintiff's employment with Defendant-Employer.
10. Plaintiff's job activities at Defendant-Employer placed him at an increased risk for developing his right thumb condition.
11. Plaintiff's job activities at Defendant-Employer more likely than not caused and significantly contributed to his development of right thumb problems.
12. Plaintiff needs surgery and other medical treatment to his right thumb, which he has not had because he needs to continue working to support his family. Plaintiff continues to work at Defendant-Employer, but splints his thumb with popsicle sticks, which has helped, but has not cured the tenosynovitis.
13. Plaintiff also experienced right shoulder pain gradually over the course of his employment with Defendant-Employer. He and his co-workers often experience aches and pains because of the physical nature of their job of loading and unloading heavy baggage on a repetitive basis.
14. Plaintiff went to Dr. Burroughs for both his shoulder and thumb pain on March 18, 2008. He continued to work through this time. Although Plaintiff reported a lifting incident fifteen months prior in which he experienced shoulder pain, the greater weight of the evidence indicates that this incident was very similar to every other day of Plaintiff's job, in which he had aches and pains from repetitive overhead lifting. On physical examination, Dr. Burroughs noted *Page 5 
several abnormal and objective findings relative to Plaintiff's thumb and shoulder, including but not limited to limited range of motion, weakness with resistance, a positive Hawkins test, a positive O'Brien's test, and positive impingement. Dr. Burroughs also noted Plaintiff's pain while lifting "weights," although this meant the weights that Plaintiff lifted at work.
15. Dr. Burroughs eventually ordered an MRI of Plaintiff's right shoulder, which Plaintiff had on August 22, 2008. The MRI showed (1) a large full thickness rotator cuff tear involving the supraspinatus tendon, (2) hypertrophic degenerative changes in the AC joint encroaching upon the rotator cuff, and (3) at least an intra labral degenerative change versus tear.
16. Plaintiff has been diagnosed with impingement in his right shoulder, which is the same thing as bursitis.
17. The greater weight of the evidence shows that the diagnoses in Plaintiff's right shoulder are more consistent with "wear and tear" type damage to Plaintiff's shoulder than acute damage.
18. Dr. Burroughs did not discuss causation between Plaintiff's work activities and his diagnoses with Plaintiff. Dr. Burroughs referred Plaintiff to Dr. Mark Ward, an orthopedic surgeon. Plaintiff first saw Dr. Ward on August 27, 2009, whereupon Plaintiff, for the first time, was advised of the August 22, 2008 MRI findings. Dr. Ward discussed the diagnoses with Plaintiff and recommended that Plaintiff have surgery to prevent any further damage.
19. Plaintiff's job activities increased the risk of his development of his shoulder conditions based on Dr. Burroughs' expert medical opinion.
20. Plaintiff's job activities more likely than not caused and significantly contributed to his development of his right shoulder condition based on Dr. Burroughs' expert medical opinion. *Page 6 
21. Plaintiff needs medical treatment, including but not limited to surgery, for his right shoulder condition. His doctors have advised him that the longer he waits to perform surgery, the higher the risk of irreparable damage. Nevertheless, Plaintiff has not had the surgery because Defendants have denied his claim for workers' compensation, and Plaintiff must support his wife and three children with some sort of income while recuperating from the surgery. The Commission finds this to be reasonable under the circumstances.
22. Plaintiff filed a Form 18 on September 18, 2008, merely 21 days after his first appointment with Dr. Ward on August 27, 2008. Furthermore, the Form 18 preceded Dr. Burroughs's diagnosis of "tenosynovitis" at his deposition on June 25, 2009.
23. The greater weight of the evidence in this case indicates that Plaintiff has compensable occupational diseases in his thumb and shoulder as the result of his lifting activities at Defendant-Employer.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The claimant bears the burden of proving the existence of an occupational disease. Gay v. J.P. Stevens Co.,79 N.C. App. 324, 331, 339 S.E. 2d 490, 494 (1986). Compensation under the Workers' Compensation Act may be awarded for an occupational disease pursuant to N.C. Gen. Stat. § 97-53(21) if two conditions are met: (1) the disease must be "proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment"; and (2) the disease cannot be an "ordinary disease of life to which the general public is equally exposed outside of the employment." Booker v.Medical *Page 7 Center, 297 N.C. 458, 468; 256 S.E. 2d 189, 196 (1979). Plaintiff has shown that his job with Defendants placed him at an increased risk developing tenosynovitis in the thumb and that his job either caused or significantly contributed to his development of tenosynovitis. Id. Therefore, Plaintiff has a compensable occupational disease in his right thumb under N.C. Gen. Stat. § 97-53(21).
2. Plaintiff has shown that his job with Defendant placed him at an increased risk developing a rotator cuff tear and bursitis, and that his job either caused or significantly contributed to his development of a rotator cuff tear and bursitis in the right shoulder. Id. Therefore, Plaintiff's rotator cuff tear and bursitis are compensable occupational diseases under N.C. Gen. Stat. §§ 97-53(13), 97-53(17).
3. Defendants' argument that Plaintiff experienced an "injury by accident" under N.C. Gen. Stat. § 97-2(6) to the exclusion of an "occupational disease" theory under N.C. Gen. Stat. § 97-53, is not valid after a thorough review of the entire record and the deposition testimony of Dr. Burroughs, and controlling legal authority that does not equate the mere experience of pain with an injury. See Chambers v. Transit Management,360 N.C. 609, 636 S.E.2d 553 (2006).
4. Plaintiff needs additional medical treatment recommended by Dr. Burroughs and Dr. Ward, who are designated as Plaintiff's authorized treating physicians. See
N.C. Gen. Stat. § 97-25.
5. Plaintiff gave adequate notice to Defendants for his occupational disease claims. Even if this were not the case, Plaintiff has shown reasonable excuse for failure to comply with the thirty (30) day statutory notice requirement for an accident and the Defendants have not shown prejudice for any alleged failure to comply with the thirty (30) day notice requirement. *Page 8 See N.C. Gen. Stat. §§ 97-22, 97-58; Gregory v. W.A.Brown Sons, ___ N.C. ___, ___ S.E.2d ___, 2010 WL 325375 (N.C.) (January 29, 2010).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Defendants shall pay for and authorize all medical treatment and recommendations for Plaintiff by Dr. Burroughs and Dr. Ward.
2. In the event that Plaintiff becomes disabled because of his injury at a later time and Defendants initiate indemnity compensation, such compensation shall be subject to a 25% attorneys' fee, payable directly to Plaintiff's attorney in the form of every fourth check or its equivalent.
3. Defendants shall pay the costs, which include an expert witness fee of $500.00 to Dr. Kevin Burroughs, if not already paid by prior order.
This the 18th day of March, 2010
 S/___________________ DANNY L. McDONALD COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1